UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVON LAMAR TORBERT,<br><br>                               Plaintiff,<br><br>v.<br><br>WILLIAM D. GORE, Sheriff of San Diego Sheriff Department; DEPUTY DAILLY, Sheriff of San Diego Sheriff Department; DEPUTY McMAHON, Sheriff of San Diego Sheriff Department; DEPUTY Y.G. GEBREBIORGIS, Sheriff of San Diego Sheriff Department; SERGEANT ESTRADA, Sheriff of San Diego Sheriff Department; COUNTY OF SAN DIEGO; and DOES 1-50,<br><br>                               Defendants. | Case No.:  14cv2911 BEN (NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [Dkt. No. 60]; and**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO COMPEL [Dkt. No. 64].** |

Plaintiff Javon Lamar Torbert, a California prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. § 1983 on December 9, 2014.  He alleges excessive force, cruel and unusual punishment, and deliberate indifference claims arising from an alleged incident where one of the defendants slammed a metal door on Torbert's left arm.

For the following reasons, the court (1) **GRANTS in part** and **DENIES in part** Torbert's motion to compel further responses to discovery; and (2) **GRANTS** Defendants' motion to compel responses to discovery.

## I. RELEVANT BACKGROUND

Torbert alleges that on October 2, 2014, Defendants Dailly, Estrada and McMahon escorted Torbert to a medical observation cell. Dkt. No. 1. Defendant Dailly then allegedly slammed a metal door on Torbert's left forearm, causing damage to his nerves that limit his movement on an ongoing basis. *Id.* On October 21, 2014, Torbert alleges that Deputy Gebrebiorgis abruptly terminated Torbert's appointment with the physician before it was done, thereby denying Torbert medical care for his forearm. *Id.* Then, when Torbert insisted that he complete his appointment, he was tackled to the ground and placed inside a safety cell. *Id*.

In this motion to compel discovery, Torbert seeks additional responses and video footage. Torbert states that before filing the motion he sent "numerous letters to confer concerning these discovery issues and [received] no response…compelling the defendants is the only option." In their opposition, Defendants assert they answered both of Torbert's letters and submit proofs of service. Dkt. No. 62-1. They also report that they met and conferred with Torbert during his deposition via videoconference on January 21, 2016 and discussed the location of cameras within the Vista Detention Facility. Torbert addressed some of Defendants' contentions in his reply.

Meanwhile, Defendants filed their own motion to compel, with a hearing date that passed on March 30, 2016. Torbert never filed an opposition to the motion. Defendants' motion concerns Torbert's complete failure to provide any responses to Defendants' discovery requests, despite promising to do so by January 28, 2016.

## II. LEGAL STANDARD

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and

citation omitted). Federal Rule of Civil Procedure 26(b)(1) offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

District courts have broad discretion when determining relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). However, this discretion should be balanced with the obligation to interpret the Rules in order to secure a "just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1. Additionally, this Court may restrict discovery when necessary to prevent "annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). The Court should also impose limits when "the burden or expense of the proposed discovery outweighs its likely benefit[.]" Fed. R. Civ. P. 26(b)(2)(C).

### III. TORBERT'S MOTION TO COMPEL

#### A. Requests for Production of Video Footage from Defendant Sheriff Gore.

##### 1. Surveillance video from Module 8D on September 18, 2014 and December 15, 2014 (RFP Nos. 1(a) and (d)).

Torbert requests video footage from September 18, 2014, and December 15, 2014. He believes the sought footage includes an alleged incident where a deputy takes a blanket off of Torbert's bed and throws it at an inmate of another race, and another

alleged incident where Torbert was cuffed, placed in a holding cell, and then had his head slammed against the wall by a deputy. Torbert alleges that the video footage is relevant because it undermines Gore's credibility and supports Torbert's *Monell*[1] allegation. Gore objects to the relevance of the video footage because Gore was not involved in either incident, the video footage does not support Torbert's *Monell* claim, and the complaint only references incidents from October 2, 2014, and October 21, 2014.[2] Additionally, Gore explains that Torbert mistakenly attributes his involvement because his name is on the letterhead and in the signature line of the Internal Affairs reports that Torbert received in response to his Internal Affairs complaints.[3] Additionally, Torbert confirmed during his deposition on January 21, 2016, that Gore was not personally involved in either incident.

After assessing the parties' contentions, the Court finds that Torbert's requests for video footage from September 18, 2014 and December 15, 2014 are not relevant to his complaint. The September 18, 2014 incident does not include either Torbert or a defendant in the case. While the December 15, 2014 incident does include Torbert, it does not relate to the subject matter of his complaint.

In addition, Torbert's *Monell* allegation does not find support in the alleged incidents. A *Monell* allegation requires a plaintiff to prove that "action pursuant to official municipal policy caused plaintiff's injury." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Those policies can include "the decisions of a government's lawmakers, the

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[2] In the opposition, Gore states the date as September 24, 2014 rather than September 18, 2014. The Court reviewed the Internal Affairs report documenting the incident and concludes that the incident occurred on September 18, 2014. As such, the Court interprets the September 24, 2014 date in the opposition as a clerical error.

[3] Torbert filed an Internal Affairs complaint regarding an incident that occurred on September 18, 2014, which did not involve him. Torbert also filed an Internal Affairs investigation addressing an incident that occurred on December 15, 2014, which did involve him but was not included in his complaint.

acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*. Such a policy can be shown where a municipality's failure to train its employees in a relevant respect amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). When the allegation includes a failure to train employees, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Bd. Of the County Comm'Rs v. Brown*, 520 U.S. 397, 409 (1997). But "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. Further, the alleged incidents must constitute actual Constitutional violations. *Id*.

Here, Torbert's *Monell* claim alleges a failure to adequately train deputies, including: failure to properly discipline deputies involved in misconduct; retention of deputies with a propensity for excessive force; failure to provide adequate medical care to inmates; failure to enforce proper processes when inmates file complaints via Internal Affairs; and "ratification by the highest levels of authority" of the specified Constitutional violations. But Torbert does not show that the two incidents in question were actual Constitutional violations. Instead, only Torbert himself asserts that the incidents were actual Constitutional violations. Because the alleged incidents have not been proven acts of a Constitutional violation, they cannot be used to support a pattern of Constitutional violations and cannot form the basis of a notice to Defendants of a failure to train their employees.

Accordingly, this Court **DENIES** Torbert's requests for Production of video footage from September 18, 2014, and December 15, 2014 because they are not relevant and do not support a *Monell* allegation.

/ / /

/ / /

**2. Surveillance video from October 3, 2014 (RFP No. 1(b)).** [4]

Torbert requests video footage from October 3, 2014 that he believes shows deputies waking up Torbert for a doctor's appointment and forcing him to walk without his authorized cane. He asserts that the video footage is relevant because it supports his cruel and unusual punishment claim. Defendant Gore explains that, in order to protect inmate privacy, there are no cameras inside the medical isolation cells, and thus there is no video footage of Torbert being woken up inside the medical isolation cell. But, Gore says he will produce any video footage, to the extent that it might exist, of Torbert walking in the hallway outside of the medical isolation cell.

The Court **GRANTS** Torbert's Motion to Compel RFP 1(b). Defendant Gore must produce any video footage, assuming it exists, from outside of the medical isolation cell for the specified date and time. Any video footage must be produced at the correct speed and without any blank spots.

**3. Surveillance video from October 21, 2014 (RFP No. 1(c)).**

Torbert requests video footage from October 21, 2014 that he believes shows Defendant Gebregiorgis tackling Torbert to the ground during Torbert's doctor's appointment. Gore provided video footage of this incident, although the video was produced at too fast a speed and is not reviewable.[5] Torbert alleges that the video footage was from a camera "that is almost out of range with the incident" and requests footage from a camera that he believes is pointed directly at the door of the observation cell. Gore asserts that he explained to Torbert during the meet and confer that "no such footage existed." Supporting this assertion, defense counsel Melissa Holmes filed a

---

[4] While Torbert wrote "October 3" in the motion, his complaint references that these actions happened on October 2, 2014. Where both Torbert and Defendants refer to October 3, the court assumes that they refer to the same incident alleged in the complaint as occurring on "October 2, 2014."

[5] Gore states that he hired an independent vendor to convert the requested video footage for Torbert's viewing. But the vendor inadvertently copied the footage at too fast of a speed. Gore is in the process of obtaining a new copy for Torbert.

declaration, signed under penalty of perjury, attesting to that fact.

The Court **DENIES in part** request no. 1(c) from the October 21, 2014 incident to the extent it seeks video footage that does not exist.  The court **GRANTS in part** the request to the extent that Gore has not yet reproduced a copy of the video footage at the correct speed.

### B. Interrogatories to Defendant Dailly.

#### 1. Requests for Production Disguised as Interrogatories (Interrogatory Nos. 4 and 8).

In a request for production, a party may request another party "to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control." Fed. R. Civ. Pro. 34.  As for interrogatories, a party may serve another party "with no more than 25 written interrogatories." Fed. R. Civ. Pro. 33.

Defendant Dailly argues that interrogatory nos. 4 and 8 are actually requests for production and objects that they are "compound, unintelligible, vague, and ambiguous." But without waiving his objection, Dailly answered both interrogatories.  In response to Interrogatory No. 4, which seeks a copy and explanation of the "proper procedure for placing inmates with canes inside holding cells," Daily responded that "canes that are provided to inmates are kept outside the cells and provided to the inmate when they need to be escorted out of the cell." Dailly responded to Interrogatory No. 8, which asks for photos and the thickness of the door to the Medical Isolation cell #4, with an estimation that the door is approximately two inches thick.  Dailly did not produce any documents for either interrogatory.

Having reviewed the parties' positions, the Court finds that Interrogatory Nos. 4 and 8 are framed as requests for production.  Nonetheless, Dailly fully responded to them as interrogatories.  Accordingly, the Court **DENIES** Torbert's requests to compel further responses to Interrogatory Nos. 4 and 8.

///

## 2. Whether Proper Policies were Followed (Interrogatory No. 6).

Interrogatory No. 6 asks whether "all policies and procedures" of the detention center were followed by "all staff members" on October 2, 2014. Dailly objected that it is "impossible to answer without speculation." Torbert asserts that the interrogatory is "very clear." The Court finds that requiring Dailly to ascertain whether "all policies and procedures" were followed at the detention center "by all staff involved" is overly broad and not possible to answer. Dailly can only speak as to his personal knowledge. An answer for anyone else requires speculation. The interrogatory is also ambiguous as there may be several policies for Defendants to follow that are not relevant to this case. Therefore, the Court **DENIES** Torbert's request for a response to Interrogatory No. 6.

## 3. Number of Surveillance Cameras (Interrogatory No. 15).

Interrogatory No. 15 asks for the number of surveillance cameras that are located in the Medical Isolation hallway where the October 2, 2014 incident occurred. Torbert asserts that knowing the number of cameras in the Medical Isolation hallway will demonstrate that there is additional video footage of the October 2, 2014 incident. Dailly objects because providing that information "could constitute an unwarranted invasion of privacy and breach of institutional security." Specifically, Dailly argues that knowledge of the number of cameras in the Medical Isolation hallway could pose a security risk to Torbert or another inmate. Nonetheless, Dailly says he has provided all video footage of Torbert in the Medical Isolation unit.

"When discoverable information may give rise to institutional safety and security concerns, courts balance the need for the information and the extent the information compromises security to determine whether disclosure is warranted." *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012); *see Ibanez v. Miller*, U.S. Dist. LEXIS 98394, *8 (E.D. Cal. 2009) (balancing the probable harm of the disclosure and the gravity of that harm against any prejudice to the plaintiff).

The Court balances the potential harm of disclosing the number of cameras in the Medical Isolation hallway and the gravity of that disclosure with the potential prejudice

Torbert may suffer by not having that information. First, the need for the information is minimal, as Dailly says he has provided all video footage, which answers Torbert's question as to whether other footage exists. Second, releasing the information as to the number of security cameras in a given area could pose a security threat that could endanger Torbert and other inmates. Torbert does not present a compelling need for the information and is able to present his claim without it. Thus, the potential harm of disclosing the information outweighs the prejudice Torbert may suffer. As such, the court **DENIES** Torbert's motion to compel a response to this interrogatory.

### C. Defendant Estrada.

#### 1. Past Complaints (Interrogatory No. 17).

Interrogatory No. 17 asks whether Defendant Estrada has "ever been reprimanded for misbehavior while employed as a sheriff." Estrada objects that it is irrelevant, seeks reports from internal affairs investigations, and information protected from disclosure under the official information privilege, California Penal Code § 832.5, 832.7, and 832.8; Evidence Code § 1043. Regardless, Defendant Estrada produced all Internal Affairs investigations that relate to Torbert's complaint. Torbert argues that the interrogatory is relevant because it addresses Estrada's "credibility."

The Court finds Torbert has not sufficiently shown the relevance of the interrogatory. *Marti v. Baires*, 2012 WL 2029720, *8 (E.D. Cal. 2012) (noting that the party moving to compel bears the burden of demonstrating why the objections are not justified). At a minimum, whether Estrada has been reprimanded for things not involving inmates would not be relevant. Further, the term "misbehavior" is overbroad and unclear. Moreover, Estrada provided all Internal Affairs investigations that address the incidents from October 2, 2014, and October 21, 2014. Accordingly, the Court **DENIES** Torbert's request to compel a further response to this interrogatory.

#### 2. Analysis of Video Footage (Interrogatory No. 18).

Interrogatory No. 18 asks for an explanation of how "video surveillance is looked at, who records the footage when a subordinate wants to look at certain footage." Estrada

1  objects that this interrogatory is "compound, unintelligible, vague, and ambiguous." But
2  without waiving his objection Defendant Estrada answered that "videos are viewed on a
3  computer." Torbert contends that the request is not compound and is "very simple."
4      The Court finds that Torbert's interrogatory is unintelligible. The phrases,
5  "explain how video surveillance is looked at" and "who records the footage when…" are
6  vague and without context. The Court finds that no further response by Estrada is
7  needed, and **DENIES** Torbert's request as to this interrogatory.

8      **D. Defendant McMahon: Official Information Privilege (RFP No. 1).**

9      Request for Production No. 1 seeks "any and all documents concerning complaints
10 filed against you including but not limited to, incident reports, grievances, investigations,
11 complaints, interviews, reprimands, evaluations, reviews, and notes." Defendant
12 McMahon objects that the RFP is irrelevant, and is vague and ambiguous in relation to
13 "notes" and "interviews." He also asserts official information privilege and submits Lt.
14 Duckworth's Declaration and privilege log to establish the privilege. Torbert asserts that
15 RFP No. 1 is relevant because Deputy McMahon escorted Torbert down the hallway after
16 the alleged incident on October 2, 2014, and submitted a rules violation write-up on
17 Torbert, which he claims is false.
18     Federal law regarding privilege applies to federal question cases. Fed. R. Evid.
19 501; *see Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989).
20 Federal common law recognizes a qualified privilege for "official information." *Kerr v.*
21 *U.S. Dist. Court for Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975). Official
22 information protected by this qualified privilege includes government personnel files.
23 *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The official
24 information privilege is subject to the competing interests of the requesting party. In
25 general, information is "subject to disclosure especially where protective measures are
26 taken." *Id.*
27     The party asserting the official information privilege must invoke it by name and
28 make a substantial showing of privilege. *Kelly v. City of San Jose*, 114 F.R.D. 653, 669

(N.D. Cal. 1987).  To make such a showing, a "party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter."  *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (citing *Kerr*, 511 F.2d at 198).  The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality,
>
> (2) a statement that the official has personally reviewed the material in question,
>
> (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer,
>
> (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and
>
> (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Kelly*, 114 F.R.D. at 670.

"If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  Plaintiff can defeat the official information privilege by submitting an affidavit that "1) describ[es] how, in the particular situation, the requested information is relevant to the litigation, or reasonably calculated to lead to the discovery of admissible evidence, 2) identif[ies] interests of plaintiff's that would be harmed if the material were not disclosed, and 3) specif[ies] how that harm would occur and how extensive it would be." *Kelly*, 114 F.R.D. at 671.

If a defendant makes the threshold showing, then courts can rely on a weighted balancing approach because "the interests of one side [are] generally likely to be

appreciably weightier than the interests of the other." *Kelly*, 114 F.R.D. at 661.  But the "moderate pre-weighting in favor of disclosure will not disable courts from protecting" a substantial threat to "obviously important law enforcement interests," such as where plaintiff is seeking the names of confidential informants in on-going criminal investigations. *Id*.

Here, Defendant McMahon submitted Lt. Duckworth's Declaration addressing the official information privilege.  Dkt. No. 62-1.  Lt. Duckworth first asserts that he "has made every effort to maintain the security and confidentiality of the Sheriff's Department records under I.A. control pursuant to state and federal law." *Id*.  The Court finds that Defendant McMahon has met the first element.

The second element requires Lt. Duckworth to have personally reviewed the material in question. Here, Lt. Duckworth states that he has "responsibility for conducting administrative investigations of allegations of misconduct by San Diego County Sheriff's deputies, also records of administrative investigations are maintained under my supervision in [Internal Affairs]." Dkt. No. 62-1.  The Court finds Lt. Duckworth's assertion sufficient to meet the second element.

In assessing the third element, a "general assertion" that a law enforcement organization's internal investigatory system "'would be harmed by disclosure of the documents is insufficient' to meet the threshold test for invoking the official information privilege." *Soto*, 162 F.R.D. 614 (quoting *Chism v. Country of San Bernardino*, 159 F.R.D. 531, 534-35 (C.D. Cal. 1994)).  The party resisting discovery "must specifically describe how disclosure of the requested documents in that particular case would be harmful." *Soto*, 162 F.R.D. at 614; *Miller*, 141 F.R.D. at 300-01.

Defendant McMahon asserts that deputies' evaluations and internal affairs records will no longer serve their intended purpose of improving deputies' performances or enhancing the quality of law enforcement services if revealed, which is critical to deputies, their supervisors, and the public.  Dkt. No. 62-1.  Additionally, McMahon argues that "because [Torbert] is pro per, and based on his history he's likely to be

incarcerated in County jails again, it would be impossible to craft a protective order that would protect Deputy McMahon's privacy interests."

Disclosure of Defendant McMahon's complete disciplinary record to an inmate, who Defendant McMahon oversees, would not be conducive to a safe environment for Defendant McMahon or other inmates. Moreover, Torbert has a criminal history, and if he is incarcerated again, the disclosure of McMahon's complete disciplinary record to Torbert directly—rather than to an attorney acting on his behalf—would inhibit McMahon from effectively performing his job. Accordingly, the Court finds that the third element is satisfied.

The fourth element asks whether disclosure, under a carefully crafted protective order, would create a substantial risk of harm to significant government interests. "The use of a carefully drafted protective order, under which grants access to only the plaintiff, substantially reduces the confidentiality interests asserted by defendants." *Kelly*, 114 F.R.D. at 671; *Hampton v. City of San Diego*, 147 F.R.D. 227 (S.D. Cal. 1993) (endorsing use of protective order to protect privacy interests of officers). But where a substantial threat to "obviously important law enforcement interests," such as where plaintiff is seeking the names of confidential informants in on-going criminal investigations, it is unlikely that a carefully crafted protective order could serve both interests. *Id*.

Here, Defendant McMahon argues that it would be impossible to create a carefully crafted protective order to protect his privacy interests because Torbert is "pro per, and based on his history, he's likely to be incarcerated in County Jails again." The Court agrees that due to Torbert's incarcerated status, his knowledge of Defendant McMahon's disciplinary record, even if under a protective order, would inhibit Defendant McMahon's ability to effectively perform her job. As such, Defendant McMahon has satisfied the fourth element.

Finally, the fifth element requires a projection of how much harm would be done to those interests if disclosure occurred. McMahon argues that disclosure of confidential

records could "potentially discourage those persons who may provide information; diminish the confidentiality of others who have provided information to the Department; disrupt the vital, day to day operations of the department; divert department personnel from their regular duties; erode the integrity and security of such records; affect morale of many departmental employees; consume inordinate time, expenses, and resources." Dkt. No. 62-1. The Court finds that disclosing Defendant McMahon's disciplinary record to Torbert could substantially harm operating procedures, risk security policies, and misallocate resources. Accordingly, McMahon has met the fifth element.

Defendant McMahon has met the burden for invoking the official information privilege. Torbert did not file a separate affidavit to refute McMahon's official information privilege. Further, on balance, the court finds that in light of the difficulties to protect McMahon's privacy interests, it is more likely than not that significant governmental interests would be harmed if the information is disclosed. Accordingly, the Court **DENIES** Torbert's request to compel discovery of the documents contained in RFP No. 1.

### IV. DEFENDANTS' MOTION TO COMPEL

On December 18, 2016, Defendants served Torbert with the following discovery:

- Estrada served 18 interrogatories.
- County of San Diego served 25 interrogatories and 32 requests for production.
- McMahon served 20 interrogatories.
- Gebregiorgis served 21 interrogatories.
- Sheriff Gore served 9 interrogatories.

The responses were due January 20, 2016. Torbert did not respond. Torbert and defense counsel met and conferred via videoconference on January 21, 2016. Torbert said he would provide the responses by January 28. To date, he has not provided the responses. Nor did he oppose this motion.

A party may move to compel discovery responses on notice to the opposing party

14
14cv2911 BEN (NLS)

and after certifying that the movant, in good faith, conferred or attempted to confer with the party failing to respond. Fed. R. Civ. Proc. 37(a)(1). If the party still fails to respond, a motion to compel is appropriate. Fed. R. Civ. Proc. 37(a)(3)(B). Here, defense counsel asserts that she could not meet and confer in time with Torbert due to his incarceration status.

Answers and objections to interrogatories and requests for production must be served within 30 days of being served with the discovery. Fed. R. Civ. Proc. 33(b)(2) and 34(b)(2)(A). The parties can stipulate or the court can order that the response time be longer. *Id.* For each interrogatory and document request not timely objected to, any objection is deemed waived. Fed. R. Civ. Proc. 33(b)(4); *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 687 (S.D. Cal. 1996) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992)). For good cause shown, the court can excuse the failure to object. Fed. R. Civ. Proc. 33(b)(4). Good cause includes clerical error and a short period of tardiness. *Burroughs*, 167 F.R.D. at 687.

Here, Torbert failed to provide any responses to the propounded discovery. In a conference with defense counsel he acknowledged the discovery was due and said he would provide it by January 28, 2016. But he never did. Further, Torbert never filed an opposition to this motion to compel. Based on these facts, the court finds good cause to grant the motion to compel and order Torbert to respond to the interrogatories and requests for production without objection. The court, therefore **GRANTS** Defendants' motion to compel.

## V. CONCLUSION

Accordingly, the court **ORDERS:**

1. Torbert's motion to compel further response from Defendant Gore to Request for Production Nos. 1(a) and 1(d) is **DENIED**. With respect to any outstanding video surveillance footage as described from October 2, 3, and 21, 2014, Defendant Gore must produce a copy of it no later than **April 18, 2016**.
2. Torbert's motion to compel further response from Defendant Dailly to

Interrogatory Nos. 4, 6, 8, and 15 is **DENIED**.

3. Torbert's motion to compel further response from Defendant Estrada to Interrogatory Nos. 17 and 18 is **DENIED**.

4. Torbert's motion to compel further response from Defendant McMahon is **DENIED**.

5. Defendants' motion to compel is **GRANTED**, and Torbert must provide responses to Defendants by **April 18, 2016**.

**IT IS SO ORDERED.**

Dated:  April 8, 2016

Hon. Nita L. Stormes
United States Magistrate Judge